UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------x

CROSSING BAY PARTNERS, LLC, individually
and derivatively on behalf of EquipID, Inc.,

                      Plaintiff,

                                                       25-cv-4834 (PKC)

         -against-                                 OPINION AND ORDER

STEVEN GOTTFRIED, UTILIZECORE INC.
and EQUIPID, INC.,

                     Defendants.

-------------------------------------------------------------x

CASTEL, U.S.D.J.

        Defendant EquipID, Inc. ("EquipID") is a Delaware corporation that operates a platform that permits users, typically large businesses or organizations, to monitor mechanical equipment in their facilities.  Plaintiff Crossing Bay Partners, LLC ("Crossing Bay") is a shareholder of EquipID and alleges that EquipID's founder and former CEO, defendant Steven Gottfried, absconded with EquipID's intellectual property for use at a new company, defendant UtilizeCore Inc. ("UtilizeCore"), which is engaged in the same line of business as EquipID.  In its Second Amended Complaint (the "Complaint"), Crossing Bay brings a direct claim against EquipID for breach of the covenant of good faith and fair dealing implicitly incorporated into a stock purchase agreement with EquipID.  Additionally, Crossing Bay brings two derivative claims on behalf of EquipID for misappropriation of trade secrets against Gottfried and UtilizeCore and for breach of fiduciary duty against Gottfried.

        Defendants have jointly moved to dismiss each of Crossing Bay's claims. Because the Complaint has failed to satisfy the pleading requirements of Rule 23.1, Fed. R. Civ.

P., the derivative claims will be dismissed.  The Court concludes, however, that Crossing Bay has stated a claim for breach of the implied covenant of good faith and fair dealing, and the motion will be denied as to that claim.

BACKGROUND.

Defendant Steven Gottfried is the founder, controlling shareholder, and former Chief Executive Officer ("CEO") of defendant EquipID, a Delaware corporation.  (Compl't ¶¶ 1, 6, 19.)  EquipID operates an "Asset Management Platform" containing a "Digital Asset Inventory."  (Id. ¶ 34.)  The digital inventory collects information from EquipID "tags" installed on customers' mechanical equipment.  (Id.)  Using EquipID's proprietary software, customers can communicate with and monitor their equipment in real time.  (Id.)  Per the Complaint, these tags "provide[] critical repair, maintenance, and compliance guidance (such as O.E.M. manuals, wiring diagrams, how-to videos, and regulatory requirements) to field service personnel and facilities managers at the site and equipment level . . . ."  (Id. ¶ 35.)

In September 2020, plaintiff Crossing Bay and EquipID entered into a Series Seed Preferred Stock Purchase Agreement ("SPA"), which was signed by Gottfried in his capacity as CEO of EquipID.  (Id. ¶¶ 11–12.)  Pursuant to the SPA, Crossing Bay paid $206,400 for 40,000 shares of Series Seed Preferred Stock in EquipID.  (Id. ¶¶ 13–14.)  The SPA contained a provision covering "Intellectual Property," which provided that "[e]ach employee . . . has assigned to the Company all intellectual property rights he or she owns that are related to the Company's business . . . and all intellectual property rights that he, she or it solely or jointly conceived, reduced to practice, developed or made during the period of his, her or its employment . . . ."  (Id. ¶ 15.)  The SPA further provided that ". . . there are no agreements,

understandings, instruments, contracts or proposed transactions to which the Company is a party or by which it is bound that involve . . . (iii) the grant of rights to manufacture, produce, assemble, license, market, or sell its products to any other Person that limit the Company's exclusive right to develop, manufacture, assemble, distribute, market or sell its products . . . ." (Id. ¶ 16.)

According to the Complaint, EquipID was "growing significantly" and had entered into numerous profitable contracts with prominent businesses, including Apple and Chipotle. (Id. ¶¶ 21–23, 28.) And after months of negotiations, EquipID entered into a contract with Balfour Beatty, which was expected to generate revenues of more than $40 million for EquipID. (Id. ¶¶ 23–24.)

Shortly after EquipID entered into the Balfour Beatty contract, however, Gottfried shuttered the business and caused it to fail as a going concern. (Id. ¶¶ 26–27.) According to the Complaint, Gottfried unilaterally terminated the contract between EquipID and Balfour Beatty, fired EquipID's key employees and shut down its operations. (Id. ¶¶ 25–26, 33.) Gottfried allegedly took such actions without notice to Crossing Bay or other shareholders of EquipID. (Id. ¶ 30.)

Crossing Bay alleges that after Gottfried shut down EquipID, he transferred the company's intellectual property—including its Asset Management Platform—to his new venture, UtilizeCore, without compensation to EquipID. (Id. ¶¶ 2, 33–34, 40.) UtilizeCore offers the same services as EquipID and is marketing and selling EquipID's technology. (Id. ¶¶ 2, 36–37.) UtilizeCore also employs former employees of EquipID and is run by Gottfried's son, Ryan Gottfried. (Id. ¶¶ 2, 38.)

Crossing Bay's Complaint asserts three claims. In Count One, styled as a direct claim against EquipID, Crossing Bay alleges that EquipID breached the implied covenant of good faith and fair dealing contained in the SPA by permitting Gottfried to appropriate and use EquipID's intellectual property at UtilizeCore. (Id. ¶¶ 42–49.) In Count Two, characterized as a derivative claim brought on behalf of EquipID, Crossing Bay alleges that Gottfried and UtilizeCore misappropriated EquipID's intellectual property, which were trade secrets. (Id. ¶¶ 50–63.) As to Count Three, also styled as a derivative claim brought on behalf of EquipID, Crossing Bay alleges that Gottfried breached his fiduciary duty to EquipID as an officer, director and controlling shareholder by usurping a corporate opportunity that belonged to EquipID. (Id. ¶¶ 64–68.)

Defendants have moved to dismiss the Complaint for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6), Fed. R. Civ. P. (ECF 38.)

DISCUSSION.

I. Rule 12(b)(6) Standard.

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A court assessing the sufficiency of a complaint must disregard legal labels or conclusions, which are not entitled to the presumption of the truth. Id. at 678. Instead, the court must examine only the well-pleaded factual allegations, if any, "and then determine whether they plausibly give rise to an entitlement to relief." Id. at 679. "Dismissal under Rule 12(b)(6) is therefore appropriate only if 'it is clear from the face of the complaint, and matters of which the

court may take judicial notice, that the plaintiff's claims are barred as a matter of law.'" Michael Grecco Productions, Inc. v. RADesign, Inc., 112 F.4th 144, 150 (2d Cir. 2024) (quoting Sewell v. Bernardin, 795 F.3d 337, 339 (2d Cir. 2015)).

The Court is limited to consideration of the allegations of the complaint but it "is deemed to include any written instrument attached to it as an exhibit, materials incorporated in it by reference, and documents that, although not incorporated by reference, are 'integral' to the complaint." Sira v. Morton, 380 F.3d 57, 67 (2d Cir. 2004) (citations omitted) (quoting Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002)).

II.   Crossing Bay's Direct and Derivative Claims.

Because defendants' arguments for dismissal of the Complaint depend on whether Crossing Bay's claims are direct or derivative, the Court first considers whether the Complaint correctly characterized the good faith and fair dealing claim as a direct claim and the breach of fiduciary duty and misappropriation claims as derivative claims.  Although defendants do not challenge the Complaint's categorization of the claims, "[t]he Court should not merely rely on 'plaintiff's characterization of his claims in the complaint, but . . . must look to all the facts of the complaint and determine for itself whether'" the Complaint brings direct or derivative claims. Saltz v. First Frontier, LP, 782 F. Supp. 2d 61, 78 (S.D.N.Y. 2010) (Sand, J.) (quoting San Diego Cnty. Emps. Ret. Ass'n v. Maounis, 749 F. Supp. 2d 104, 126 (S.D.N.Y. 2010) (Batts, J.)), aff'd, 485 F. App'x 461 (2d Cir. 2012).

"The derivative form of action permits an individual shareholder to bring suit to enforce a corporate cause of action against officers, directors, and third parties." Espinoza ex rel. JPMorgan Chase & Co. v. Dimon, 797 F.3d 229, 233 (2d Cir. 2015) (internal quotation marks omitted) (quoting Kamen v. Kemper Fin. Servs., Inc., 500 U.S. 90, 95 (1991)).  "Devised as a

suit in equity, the purpose of the derivative action is to place in the hands of the individual shareholder a means to protect the interests of the corporation from the misfeasance and malfeasance of faithless directors and managers." Id. at 233–34 (internal quotation marks and brackets omitted) (quoting Kamen, 500 U.S. at 95).

In determining whether Crossing Bay's claims are properly characterized as direct or derivative, the Court will apply Delaware law. "A federal court sitting in diversity jurisdiction applies the choice of law rules of the forum state." Forest Park Pictures v. Universal Television Network, Inc., 683 F.3d 424, 433 (2d Cir. 2012). The choice of law rules of New York, the forum state, instruct the Court to "look to the law of the state of incorporation when adjudicating whether a claim is direct or derivative." AHW Inv. P'ship v. Citigroup, Inc., 806 F.3d 695, 699 (2d Cir. 2015). EquipID is incorporated in Delaware and thus Delaware law controls.

When assessing whether a claim brought by a shareholder is direct or derivative, Delaware courts apply the test set out by the Delaware Supreme Court in Tooley v. Donaldson, Lufkin & Jenrette, Inc., 845 A.2d 1031 (Del. 2004).[1] See AHW, 806 F.3d at 699. Under the Tooley test, "courts rely on the following two inquiries: (1) who suffered the alleged harm—the corporation or the suing stockholder individually; and (2) who would receive the benefit of the recovery or other remedy." F5 Capital v. Pappas, 856 F.3d 61, 72 (2d Cir. 2017) (internal quotation marks and brackets omitted) (quoting Tooley, 845 A.2d at 1035). "If the corporation alone, rather than the individual stockholder, suffered the alleged harm, the corporation alone is entitled to recover, and the claim in question is derivative." Id. (quoting Feldman v. Cutaia, 956

---

[1] Defendants do not challenge the Complaint's characterization of Crossing Bay's claims. Throughout their briefing, however, defendants cite to New York law. Regardless of whether the Court applies Delaware law or New York law in determining whether Crossing Bay's claims are direct or derivative, the outcome would be the same because New York courts also apply the test from Tooley. See Yudell v. Gilbert, 99 A.D.3d 108, 110 (1st Dep't 2012) (adopting the Tooley test as "consistent with New York law"); see also In re 305 E. 61st St. Grp. LLC, 130 F.4th 272, 279 (2d Cir. 2025) (noting that the First, Second and Third Departments have adopted the Tooley test).

A.2d 644, 655 (Del. Ch. 2007), aff'd, 951 A.2d 727 (Del. 2008)).  "Alternatively, if the stockholder suffered harm independent of any injury to the corporation that would entitle him to an individualized recovery, the cause of action is direct."  Id. (quoting Feldman, 956 A.2d at 655).  Indeed, to bring a direct claim, the "stockholder must demonstrate that the duty breached was owed to the stockholder and that he or she can prevail without showing an injury to the corporation."  Brookfield Asset Mgmt., Inc. v. Rosson, 261 A.3d 1251, 1266 (Del. 2021) (quoting Tooley, 845 A.2d at 1039).

Importantly, however, "when a plaintiff asserts a claim based on the plaintiff's own right, such as a claim for breach of a commercial contract, Tooley does not apply."  Miller v. Brightstar Asia, Ltd., 43 F.4th 112, 122 (2d Cir. 2022) (quoting Citigroup Inc. v. AHW Inv. P'ship, 140 A.3d 1125, 1139–40 (Del. 2016)).  Thus, "a suit by a party to a commercial contract to enforce its own contractual rights is not a derivative action under Delaware law, . . . despite the fact that [the plaintiff] cannot demonstrate its injury without showing an injury to the corporation in which it owns stock."  Id. (citations and internal quotation marks omitted) (first quoting NAF Holdings, LLC v. Li & Fung (Trading) Ltd., 118 A.3d 175, 182 (Del. 2015); then quoting NAF Holdings, LLC v. Li & Fung (Trading) Ltd., 772 F.3d 740, 744 (2d Cir. 2014)).

Applying Delaware law, Crossing Bay's claim against EquipID for breach of the implied covenant of good faith and fair dealing is properly characterized as a direct claim.  As to that claim, the Complaint alleges that, "[b]y not protecting EquipID's Intellectual Property and allowing defendant Gottfried to steal it and use it at UtilizeCore, EquipID acted in bad faith and deprived the Plaintiff of the benefit of its bargain under the SPA."  (Compl't ¶ 48.)  Put simply, Crossing Bay seeks to vindicate its own purported contractual rights under the SPA.  When, as here, the plaintiff "allege[s] 'an implied covenant of good faith and fair dealing that creates a

- 7 -

contractual duty owed to him, not to [the company],'" the claim is properly brought as a direct claim. In re 305 E. 61st St. Grp. LLC, 130 F.4th 272, 281 (2d Cir. 2025) (quoting Miller, 43 F.4th at 124); see also Miller, 43 F.4th at 124 ("Because [the plaintiff] alleges a violation of an implied contractual duty [contained in a shareholder agreement] owed to himself, he may bring [the claim] in a direct suit.").

The Complaint likewise has properly characterized Crossing Bay's misappropriation and breach of fiduciary duty claims as derivative claims. As to Crossing Bay's misappropriation claim, the Complaint alleges that "Gottfried had and UtilizeCore now has possession of EquipID's proprietary and confidential Intellectual Property" and that "[i]t would have been impossible for UtilizeCore to obtain EquipID's Intellectual Property without paying due consideration for it, but for defendant Gottfried's theft of it." (Compl't ¶¶ 52, 55.) EquipID suffered the alleged harm—the purported theft of its intellectual property and its use by UtilizeCore—and any recovery would flow to it. Thus, EquipID's misappropriation claim is properly brought as a derivative claim.

The breach of fiduciary duty claim is likewise properly characterized as derivative. As to this claim, the Complaint alleges that Gottfried "violat[ed] the corporate opportunity doctrine . . . [by] usurping business opportunities that rightly belong to" EquipID and "knowingly and willfully mismanaged EquipID" by "stealing the Company's assets and using them to profit for himself," "intentionally harming EquipID's operations," and "transferring . . . the interests and/or benefits of contracts . . . to UtilizeCore," among other actions. (Id. ¶¶ 66–67.) Again, the harms flowing from Gottfried's purported breaches of his fiduciary duties were suffered by EquipID and the corporation would thus benefit from any recovery on this claim. Accordingly, the breach of fiduciary duty claim is also a derivative

claim.  See Iacovacci v. Brevet Holdings, LLC, 18-cv-08048 (MKV), 2023 WL 2631966, at *11 (S.D.N.Y. Mar. 24, 2023) (Vyskocil, J.) (breach of fiduciary duty claim premised on alleged usurpation of company's corporate opportunities, improper use of its trade secrets, and solicitation of its customers was derivative under Tooley).

III. The Court Need Not Address Whether Bringing Direct and Derivative Claims in the Same Suit Presents a Conflict.

Having concluded that Crossing Bay's Complaint brings both a direct claim and derivative claims, the Court next considers defendants' arguments as to the derivative claims. Defendants first argue that Crossing Bay cannot bring derivative and direct claims premised on the same operative facts in the same action because doing so would create a conflict of interest; thus, defendants argue, Crossing Bay would not be an adequate representative for the interests of all shareholders and the corporation.  See Fed. R. Civ. P. 23.1(a) (a derivative action "may not be maintained if it appears that the plaintiff does not fairly and adequately represent the interests of shareholders or members who are similarly situated in enforcing the right of the corporation . . . ."); Cordts-Auth v. Crunk, LLC, 815 F. Supp. 2d 778, 794 (S.D.N.Y. 2011) (Karas, J.), aff'd, 479 F. App'x 375 (2d Cir. 2012) ("While there is always a theoretical conflict of interest in situations where a plaintiff in a single lawsuit seeks redress on behalf of the business entity and from the business entity, . . . it is indisputable that the existence of an actual conflict disqualifies a plaintiff from acting as representative in these dual capacities." (internal quotation marks and brackets omitted)).

However, because the Court will dismiss the derivative claims for failure to satisfy Rule 23.1's pleading requirements, the Court need not resolve this issue.[2]

---

[2] The Court notes that defendants' briefing assumes that New York law governs whether there is an impermissible conflict between Crossing Bay's direct and derivative claims.  Crossing Bay makes no challenge to defendants'

IV. Crossing Bay Has Failed to Plead Demand Futility with Particularity and Otherwise Has Failed to Comply with Rule 23.1.

Defendants argue that Crossing Bay has failed to adequately plead that it was excused from issuing a demand on EquipID before bringing its derivative claims. Specifically, defendants argue that the Complaint only supplies conclusory allegations in support of its contention that making a demand on EquipID's board of directors would have been futile. The Court concludes that the Complaint fails to adequately plead demand futility, and Crossing Bay's derivative claims will be dismissed.

"To prevent abuse of [derivative actions] . . . equity courts established as a precondition 'for the suit' that the shareholder demonstrate 'that the corporation itself had refused to proceed after suitable demand, unless excused by extraordinary conditions.'" Kamen, 500 U.S. at 95–96 (quoting Ross v. Bernhard, 396 U.S. 531, 534 (1970)). "The purpose of the demand requirement is to afford the directors an opportunity to exercise their reasonable business judgment and waive a legal right vested in the corporation in the belief that its best interests will be promoted by not insisting on such right." Id. at 96 (internal quotation marks and brackets omitted) (quoting Daily Income Fund, Inc. v. Fox, 464 U.S. 523, 533 (1984)).

Rule 23.1, Fed. R. Civ. P., "creates a federal standard as to the specificity of facts alleged with regard to efforts made to urge a corporation's directors to bring the action in question." RCM Securities Fund, Inc. v. Stanton, 928 F.2d 1318, 1330 (2d Cir. 1991).

---

reliance on New York law. But defendants' arguments contest the adequacy of representation for derivative claims, which "arises under Federal Rule of Civil Procedure 23.1 and is a procedural issue to which federal law applies." Cypress Holdings, III, L.P. v. Sport-BLX, Inc., 22-cv-1243 (LGS), 2024 WL 4265645, at *4 (S.D.N.Y. Sept. 23, 2024) (Schofield, J.); see also Halebian v. Berv, 590 F.3d 195, 204 (2d Cir. 2009) (Rule 23.1 "does not abridge, enlarge or modify any substantive right" (internal quotation marks omitted) (quoting Kamen, 500 U.S. at 95)). Accordingly, this Court is "bound by Second Circuit law interpreting and applying Rule 23.1" and not by New York law. JFURTI, LLC v. Singal, 17-cv-7206 (CM), 2018 WL 6332907, at *10 (S.D.N.Y. Nov. 12, 2018) (McMahon, J.); see also Sarkees v. E. I. Dupont De Nemours & Co., 15 F.4th 584, 588 (2d Cir. 2021) ("In a diversity of citizenship case, state law . . . applies to substantive issues, and federal law applies to procedural issues.").

Specifically, the rule requires that a complaint in a derivative action "state with particularity . . . (A) any effort by the plaintiff to obtain the desired action from the directors . . . and (B) the reasons for not obtaining the action or not making the effort." Fed. R. Civ. P. 23.1(b)(3). "Because Rule 23.1 requires that plaintiffs make particularized allegations, it imposes a pleading standard higher than the normal standard applicable to the analysis of a pleading challenged under Rule 12(b)(6)." Jiminian v. Seabrook, 760 F. App'x 38, 41 (2d Cir. 2019) (summary order) (quoting In re Am. Int'l Grp., Inc. Derivative Litig., 700 F. Supp. 2d 419, 430 (S.D.N.Y. 2010) (Swain, J.), aff'd, 415 F. App'x. 285 (2d Cir. 2011)).

"Although Rule 23.1 sets forth the pleading standard for federal court, the substance of the demand requirement is a function of state law." Espinoza, 797 F.3d at 234. "[T]he source of the demand requirement must be the law of the state of incorporation." Halebian v. Berv, 590 F.3d 195, 206 (2d Cir. 2009) (quoting RCM Securities, 928 F.2d at 1327); see also Scalisi v. Fund Asset Mgmt., L.P., 380 F.3d 133, 138 (2d Cir. 2004) ("The substantive law which determines whether demand is . . . futile is provided by the state of incorporation of the entity on whose behalf the plaintiff is seeking relief."). Because EquipID is incorporated in Delaware, the Court will apply Delaware law in determining whether Crossing Bay has satisfied the demand requirement in bringing its derivative claims. (Compl't ¶ 6.)

Under Delaware law, stockholders may only proceed with a derivative claim if they "(1) make a demand on the company's board of directors or (2) show that demand would be futile." United Food & Com. Workers Union & Participating Food Indus. Emps. Tri-State Pension Fund v. Zuckerberg, 262 A.3d 1034, 1047 (Del. 2021). It is undisputed that Crossing Bay has not made any demand on the directors of EquipID. (See Compl't ¶ 59.) Thus, the Court

must determine whether Crossing Bay has adequately alleged that such a demand would have been futile under Rule 23.1 and Delaware law.

The Delaware Supreme Court instructs courts to "ask . . . three questions on a director-by-director basis when evaluating allegations of demand futility." Zuckerberg, 262 A.3d at 1059. Those three questions are the following:

> (i) whether the director received a material personal benefit from the alleged misconduct that is the subject of the litigation demand;
>
> (ii) whether the director faces a substantial likelihood of liability on any of the claims that would be the subject of the litigation demand; and
>
> (iii) whether the director lacks independence from someone who received a material personal benefit from the alleged misconduct that would be the subject of the litigation demand or who would face a substantial likelihood of liability on any of the claims that are the subject of the litigation demand.

Id. "If the answer to any of the questions is 'yes' for at least half of the members of the demand board, then demand is excused as futile." Id.

"Generally, demand futility is assessed on a claim-by-claim . . . basis" but the Court may consolidate the analysis "[w]hen the counts are based on the same factual predicate . . . ." Los Angeles City Employees' Ret. Sys. v. Sanford, 352 A.3d 276, 324 (Del. Ch. 2026) (quoting City of Coral Springs Police Officers' Pension Plan v. Dorsey, 2022-91 (KSJM), 2023 WL 3316246, at *7 (Del. Ch. May 9, 2023), aff'd, 308 A.3d 1189 (Del. 2023)). Because the misappropriation claim and the breach of fiduciary duty claim are predicated on the same conduct—Gottfried's alleged theft of EquipID's intellectual property for UtilizeCore's benefit— the Court consolidates the demand futility analysis for Crossing Bay's two derivative claims.

The Complaint alleges that a demand on EquipID would have been futile because Gottfried "controls EquipID" and "was . . . the only Managing Member at the time of the acts

complained of," and that Gottfried would not "admit his wrong doing and sue himself."

(Compl't ¶ 59.)  Specifically, the Complaint alleges:

> Plaintiff has not made a demand on defendants Gottfried or EquipID with respect to the derivative claims because to do so would be futile. Defendant Gottfried controls EquipID, and was and is the ringleader. There is absolutely no reason to believe he would admit his wrong doing and sue himself. Demand futility is present under New York law because (a) a majority of EquipID's directors or managing members are interested (Gottfried was, on information and belief, the only Managing Member at the time of the acts complained of), (2) if and to the extent there were outside directors (Plaintiff believes there were none), those persons failed to inform themselves to a degree reasonably necessary about the transaction, or (3) those outside directors failed to exercise their business judgment in approving the transaction(s) in issue.

Id.

The Court concludes that these allegations, in combination with the other allegations in the Complaint, fail to satisfy the particularity requirement of Rule 23.1.  The Complaint fails to allege with particularity who, other than Gottfried, comprised EquipID's board of directors and the extent to which those individuals faced a conflict that would prevent them from impartially considering a litigation demand.  Again, the Complaint alleges that Gottfried "was, on information and belief, the only Managing Member at the time of the acts complained of."  (Id. ¶ 59.)  The Complaint does not explain the import of Gottfried's status as the "only Managing Member" of EquipID; EquipID is, of course, a corporation and not a limited liability company.  (Id. ¶ 6.)  See Del. Code Ann. tit. 8, § 141(a) ("The business and affairs of every corporation organized under this chapter shall be managed by or under the direction of a board of directors . . . .").  Furthermore, the Complaint alleges that plaintiff believes that there were no "outside directors" of EquipID.  (Compl't ¶ 59 (emphasis added).)  That there were no "outside directors" does not necessarily mean that there were no unconflicted directors of the company.  Elsewhere, the Complaint alleges that Gottfried "failed to hold properly noticed

meetings of the Board of Directors" and "never prepared issued meeting minutes." (Id. ¶ 41.) While Delaware law permits corporations to establish boards of directors consisting of just one member, see Del. Code Ann. tit. 8, § 141(b), nowhere does the Complaint affirmatively allege that Gottfried was the only director on EquipID's board.

Moreover, that Gottfried was the controlling shareholder does not excuse Crossing Bay from making such director-by-director allegations. Although "[t]he presence and influence of a controller is an important factor that should be considered in the . . . the demand futility inquiry," the existence of such a controlling shareholder "does not, however, 'change[] the director-based focus of [that] inquiry.'" In re Kraft Heinz Co. Derivative Litig., cv 2019-0587 (LWW), 2021 WL 6012632, at *6–7 (Del. Ch. Dec. 15, 2021) (first quoting In re BGC P'rs, Inc., cv 2018-0722 (AGB), 2019 WL 4745121, at *8 (Del. Ch. Sept. 30, 2019); then quoting Teamsters Union 25 Health Servs. & Ins. Plan v. Baiera, 119 A.3d 44, 67 (Del. Ch. 2015)), aff'd, 282 A.3d 1054 (Del. 2022). Thus, because the Court cannot discern who makes up EquipID's board of directors based on the allegations in the Complaint, the Complaint fails to satisfy Rule 23.1's particularity requirement.

Finally, the derivative claims must be dismissed for the additional reason that the Complaint fails to comply with Rule 23.1's other pleading requirements. First, Rule 23.1 requires that "[t]he complaint must be verified." Fed. R. Civ. P. 23.1(b). Here, the Complaint is merely signed by Crossing Bay's attorney of record in this action, but contains no verification made by a representative of Crossing Bay. Normally, "the failure to verify the pleading is not an adequate basis to dismiss" on its own. Cellucci v. O'Leary, 19-cv-2752 (VEC), 2020 WL 977986, at *6 (S.D.N.Y. Feb. 28, 2020) (Caproni, J.) (citing Markowitz v. Brody, 90 F.R.D. 542, 549–50 (S.D.N.Y. 1981) (Ward, J.)); see also Cordts-Auth, 815 F. Supp. 2d at 793. But Crossing

Bay's Complaint has also failed to satisfy the other requirements of Rule 23.1. The Complaint

contains no allegation "that the action is not a collusive one to confer jurisdiction that the court

would otherwise lack." Rule 23.1(b)(2), Fed. R. Civ. P. Furthermore, although the Complaint

alleges that Crossing Bay "is and was at all times a shareholder in EquipID" and that "in or about

September of 2020, the parties entered into" the SPA, the Complaint provides no factual

allegations describing when the conduct underlying Crossing Bay's claims occurred. (Compl't

¶¶ 1, 11, 61.) Thus, the Complaint has failed to "allege that the plaintiff was a shareholder . . . at

the time of the transaction complained of," as required by Rule 23.1(b)(1). These combined

failures to comply with Rule 23.1 "give the Court no confidence that this action was not brought

for purpose of harassment, a scenario that Rule 23.1 seeks to prevent." Cellucci, 2020 WL

977986, at *6.

Because the Complaint fails to comply with the pleading requirements of Rule

23.1(b), Crossing Bay's derivative claims will be dismissed.

V. Crossing Bay Has Stated a Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing.

Finally, defendants briefly argue that the Complaint has failed to state a direct

claim against EquipID for breach of the implied covenant of good faith and fair dealing

contained in the SPA. Specifically, defendants contend that the Complaint fails to allege

sufficient facts showing that EquipID itself, rather than Gottfried, demonstrated bad faith or an

intent to deprive Crossing Bay of the benefits of the SPA.

"Under New York law, 'implicit in every contract is a covenant of good faith and

fair dealing . . . which encompasses any promises that a reasonable promisee would understand

to be included.'" JN Contemp. Art LLC v. Phillips Auctioneers LLC, 29 F.4th 118, 128 (2d Cir.

2022) (quoting <u>Spinelli v. Nat'l Football League</u>, 903 F.3d 185, 205 (2d Cir. 2018)).[3] "The implied covenant of good faith and fair dealing prevents any party from doing 'anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract.'" <u>Gaia House Mezz LLC v. State St. Bank & Tr. Co.</u>, 720 F.3d 84, 93 (2d Cir. 2013) (quoting <u>Dalton v. Educ. Testing Serv.</u>, 87 N.Y.2d 384, 389 (1995)). "Integral to a finding of a breach of the implied covenant is a party's action that directly violates an obligation that may be presumed to have been intended by the parties." <u>Galvstar Holdings, LLC v. Harvard Steel Sales, LLC</u>, 722 F. App'x 12, 16 (2d Cir. 2018) (summary order) (quoting <u>M/A–COM Sec. Corp. v. Galesi</u>, 904 F.2d 134, 136 (2d Cir. 1990)). "Courts will imply an obligation of good faith only in aid and furtherance of other terms of the agreement of the parties" and "the covenant cannot be used to imply obligations inconsistent with other terms of the contractual relationship . . . ." <u>Singh v. City of New York</u>, 40 N.Y.3d 138, 146 (2023) (internal quotation marks and citations omitted).

The Complaint alleges that "EquipID breached th[e] implied covenant by interfering with the Plaintiff's ability to enjoy the benefits of the SPA – the commercialization of EquipID's Intellectual Property" and "[t]hat breach of the SPA by EquipID was at the behest and direction of Defendant Gottfried . . . ." (Compl't ¶ 18.) The Complaint further states that "[b]y not protecting EquipID's Intellectual Property and allowing defendant Gottfried to steal it and use it at UtilizeCore, EquipID acted in bad faith and deprived the Plaintiff of the benefit of its bargain under the SPA." (<u>Id.</u> ¶ 48.) The Complaint also alleges that "EquipID received no

---

[3] The claim for breach of the implied covenant of good faith and fair dealing is brought under New York law. (Compl't ¶¶ 43–47.) Neither party contends that the SPA contained a choice-of-law provision and both parties' briefs assume that New York law applies. "Under New York choice-of-law rules, 'where the parties agree that [a certain jurisdiction's] law controls, this is sufficient to establish choice of law.'" <u>Alphonse Hotel Corp. v. Tran</u>, 828 F.3d 146, 152 (2d Cir. 2016) (quoting <u>Fed. Ins. Co. v. Am. Home Assur. Co.</u>, 639 F.3d 557, 566 (2d Cir.2011)). Thus, the Court applies New York law in analyzing whether the Complaint adequately alleges a claim for breach of the implied covenant of good faith and fair dealing.

financial benefit from UtilizeCore's sale and use of EquipID assets and the use of its Intellectual Property." (Id. ¶ 40.)

Accordingly, "the dispositive question is whether a reasonable person in plaintiff['s] position would have understood the [SPA] to include a promise that" EquipID would not permit its valuable intellectual property to be stolen and used by another company without compensation.  Singh, 40 N.Y.3d at 146.  Neither party has provided the Court with the full text of the SPA.  The Complaint itself alleges that "Plaintiff acquired 40,000 shares of Series Seed Preferred Stock in EquipID . . . pursuant to the SPA" and that  "Plaintiff paid $206,400 for the Preferred Shares." (Compl't ¶¶ 13–14.)

The Complaint also quotes from two provisions of that agreement.  Paragraph 2.7 of the SPA provides that EquipID's employees and consultants have assigned to EquipID intellectual property rights related to EquipID's business that they either owned or developed during their employment with EquipID:

> Each employee and consultant has assigned to the Company all intellectual property rights he or she owns that are related to the Company's business as now conducted and as presently proposed to be conducted and all intellectual property rights that he, she or it solely or jointly conceived, reduced to practice, developed or made during the period of his, her or its employment or consulting relationship with the Company that (a) relate, at the time of conception, reduction to practice, development, or making of such intellectual property right, to the Company's business as then conducted or as then proposed to be conducted, (b) were developed on any amount of the Company's time or with the use of any of the Company's equipment, supplies, facilities or information or (c) resulted from the performance of services for the Company. Subsection 2.8 of the Disclosure Schedule lists all patents, patent applications, registered trademarks, trademark applications, service marks, service mark applications, tradenames, registered copyrights, and licenses to and under any of the foregoing, in each case owned by the Company.

(Compl't ¶ 15.)  Paragraph 2.9(a) of the SPA further provides that, except for certain Transaction Agreements not provided to the Court, there are no other agreements to which EquipID is a party

that involve, among other things, licensing of intellectual property or the grant of rights to another company to sell EquipID's products:

> Except for the Transaction Agreements, there are no agreements, understandings, instruments, contracts or proposed transactions to which the Company is a party or by which it is bound that involve (i) obligations (contingent or otherwise) of, or payments to, the Company in excess of $25,000, (ii) the license of any patent, copyright, trademark, trade secret or other proprietary right to or from the Company, (iii) the grant of rights to manufacture, produce, assemble, license, market, or sell its products to any other Person that limit the Company's exclusive right to develop, manufacture, assemble, distribute, market or sell its products, or (iv) indemnification by the Company with respect to infringements of proprietary rights.

(Id. ¶ 16.)

At the pleading stage, these factual allegations are sufficient to state a claim for breach of the implied covenant of good faith and fair dealing. Although the Complaint's allegations concerning the provisions of the SPA are sparse, taken as a whole it plausibly alleges that the SPA contemplated that EquipID would continue as a going concern, would operate by utilizing its valuable intellectual property, and would protect its intellectual property from unauthorized use. By permitting its intellectual property to be used by a competing firm, EquipID plausibly prevented Crossing Bay from receiving the benefit of its bargain in entering the SPA, i.e., holding an investment in a company that would continue to commercialize and protect its valuable asset management platform and would not suddenly shutter so that its intellectual property could be used by another firm. And the Complaint plausibly alleges that EquipID did so in bad faith in that Gottfried took EquipID's "Intellectual Property and principal assets without due consideration" to UtilizeCore for his own financial gain. (Compl't ¶¶ 2, 20.) Defendants have not pointed to any express provisions of the SPA that are inconsistent with such

implied obligations.  Thus, the Complaint has plausibly alleged a claim for breach of the implied covenant of good faith and fair dealing.

Defendants' primary argument in favor of dismissal is that the Complaint only identifies actions taken by Gottfried—instead of actions taken by EquipID—that caused EquipID to breach the implied covenant.  That argument is unavailing.  "[B]y definition, a corporation acts through its officers and directors."  Borini v. Inform Studios, Inc., 245 A.D.3d 587, 588 (1st Dep't 2026) (quoting E. Hampton Union Free Sch. Dist. v. Sandpebble Builders, Inc., 16 N.Y.3d 775, 776 (2011)).  The Complaint alleges that "Gottfried was at all relevant times an officer and director and the controlling shareholder of EquipID."  (Compl't ¶ 19.)  Defendants provide no support for the proposition that EquipID cannot be held liable for Gottfried causing the company to breach the SPA's implied covenant, and the Court declines to dismiss the implied covenant claim on that basis.

Accordingly, defendants' motion to dismiss Count One is denied.


CONCLUSION.

Defendants' motion to dismiss the Complaint is GRANTED as to Counts Two and Three and is otherwise DENIED.  The Clerk is respectfully directed to terminate the motion (ECF 38).

SO ORDERED.

P. Kevin Castel
United States District Judge

Dated: New York, New York
       July 1, 2026

- 19 -